IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

GLORIA KERR,

       Plaintiff,

v.

CHELSEA KERR RICHMOND,

       Defendant.

CIVIL ACTION FILE

NUMBER 3:15-cv-28-TCB

## O R D E R

This case comes before the Court on Plaintiff's second[1] motion for summary judgment [65] and the receiver's motion for reconsideration [71] relating to an award of his fees and expenses.

## I.   Plaintiff's Motion for Summary Judgment

### A.   Background

Plaintiff Gloria Kerr ("Kerr") is the estranged mother of Defendant Chelsea Kerr Richmond. This litigation concerns proceeds of a policy insuring the life of Timothy Kerr ("Timothy"), who was

---

[1] Kerr's first motion [17], which was filed before discovery even commenced in this case, was denied without prejudice on November 10, 2015 [38].

Richmond's father and Kerr's ex-husband. When Kerr and Timothy divorced in 1996, the divorce decree required Timothy to "continue to maintain life insurance coverage insuring [his] life in an amount of not less than $200,000.00, naming [Kerr] as sole irrevocable beneficiary . . . ." [21-1] at 13. But when Timothy died in September 2014, the only life insurance coverage he had in place was a policy issued by MetLife Insurance Company in the amount of $478,000 that named Richmond as the sole beneficiary.

In October 2014, Kerr filed a lawsuit against Richmond, MetLife, and others in the Superior Court of Spalding County, seeking $200,000 of the insurance proceeds. On November 7, Richmond sent the following e-mail to Kerr and Kerr's attorney, Jason Smith, offering to pay Kerr $200,000.00 in exchange for immediate dismissal of the lawsuit:

> I, Chelsea Richmond, agree to pay my mother, Gloria Kerr, the sum of Two-Hundred Thousand Dollars ($200,000.00) upon receipt of any life insurance payout from my late father's, Timothy Kerr, benefits program . . . . In exchange for this agreed payout, my mother, Gloria Kerr, and her counsel, Jason Smith, agree to immediately drop any and all civil complaints, dispute of benefits, or pending litigation against The Estate of Timothy Kerr, The Progressive Mountain Insurance Co., Met-Life Insurance, Joshua Kerr

as Administrator of the Estate of Timothy Kerr, and myself, Chelsea Richmond, as a group and individually.

\*    \*    \*

Upon receipt and agreement of this good faith promise between Chelsea Richmond and Gloria Kerr, all civil cases filed and disputes over benefits shall be immediately withdrawn and/or dismissed with prejudice as soon as reasonably possible. At this time, an official document is to be drafted by Gloria Kerr's counsel, Jason Smith, to be signed by both parties. The document shall fall in line with the terms and conditions offered in this correspondence.

[1-1] at 36.

A formal settlement agreement was prepared by Kerr's attorney and finalized between Kerr and Richmond on November 19, 2014. That agreement provides, in pertinent part, as follows:

I, CHELSEA RICHMOND, agree to pay my mother, GLORIA KERR, the sum of *Two Hundred Thousand Dollars* ($200,000.00) upon receipt of any life insurance payout from my late father's, *Timothy Kerr*, employer benefits program, believed at this time to be underwritten by MetLife Insurance Company of Connecticut. . . . In exchange for this agreed payout, my mother, GLORIA KERR, by and through her counsel, Jason Smith, agrees to immediately drop any and all civil complaints, dispute of benefits, and/or pending litigation against . . . Met-Life Insurance, . . . and myself, Chelsea Richmond, as a group and individually . . . .

Upon receipt of any payout from Met-Life . . . , I, CHELSEA RICHMOND, will immediately forward payment in certified

3

> funds to my mother c/o her attorney, Jason Smith, made
> payable to "*Jason Smith and Gloria Kerr*" . . . .

[1-1] at 38–39. Following execution of the settlement agreement, Kerr promptly dismissed her lawsuit and withdrew a rival beneficiary claim she had previously filed with MetLife. She then executed a general release with MetLife, which paid the full $478,000 to Richmond on or around December 10, 2014.

In the days immediately following Richmond's receipt of the insurance proceeds, she and her husband Aaron paid approximately $285,000 for a home on Daisey Lane in Justin, Texas. It is undisputed that Kerr used some of the insurance proceeds to purchase the home, although Richmond testified in her deposition that Aaron contributed $10,000 toward the purchase price. [64-3] at 66.

On December 17, 2014, approximately one week after MetLife paid the insurance proceeds to Richmond, Richmond sent an e-mail to Jason Smith claiming that she had mailed him a cashier's check for Kerr's portion of the insurance proceeds. She provided tracking information for another check referenced in the e-mail, but did not provide a tracking number for Kerr's check, stating: "I will get the

4

tracking number for you as soon as I get home, as the receipt is with my husband, and we are both at work. . . . Expect a follow up from me before the end of the business day with the tracking information." [64-5] at 9.

But Richmond never provided the tracking information, and the check never arrived. At 11:00 p.m. on December 18, 2014—the day after her e-mail claiming the check was in the mail—Richmond sent Kerr the following e-mail:

> Mom,
>
> I can't give you the money. Aaron took all of it and left. I have nothing to my name. I'm sorry. Kendall [Chelsea's daughter] and I are alone and we are being forced to move. If you want to press criminal charges against me, that's fine. Kendall will end up a ward of the state.

[64-5] at 10. However, Richmond's husband had not abandoned the family, and indeed the two are still married and living together. Between December 10, 2014 and January 9, 2015, Richmond spent approximately $374,000 of the $478,000 that was paid to her by MetLife.

In January 2015, Kerr filed this lawsuit in the Superior Court of Spalding County, and Richmond removed the case to this Court based on diversity jurisdiction. Kerr's verified amended complaint [14] asserts claims against Richmond for breach of contract, fraud, implied trust, accounting, and attorneys' fees under O.C.G.A. § 13-6-11.[2] Richmond has asserted counterclaims against Kerr for wrongful restraint, punitive damages, and attorneys' fees pursuant to O.C.G.A. § 13-6-11. [42]. Kerr now moves for summary judgment on her claim for breach of contract as well as Richmond's counterclaims. She asks the Court to impose a constructive trust over $200,000 of the insurance proceeds, including those portions of the insurance funds that were used to purchase Richmond's Daisey Lane home.

## B.    Legal Standard

The legal standards governing motions for summary judgment are well settled. Summary judgment is appropriate when "there is no

---

[2] Additional claims for unjust enrichment and constructive trust were previously dismissed by the Court. [38]. The Court noted that constructive trust is a remedy, not a separate cause of action, and therefore although it dismissed the count of the complaint that sought a constructive trust, it expressly left open the possibility that Kerr could seek the remedy of a constructive trust if she were to prevail on her claims. *Id.* at 4.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The manner in which the moving party may carry this burden depends on who will bear the burden of proof at trial. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). "[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial"; the moving party must show by reference to the record that this is so. *Id.* at 1438 n.19. "On summary judgment, a court may not weigh conflicting evidence or make credibility determinations of its own" but must instead "view all of the evidence in the light most favorable to the nonmoving party and draw all

reasonable inferences in that party's favor." *FindWhat Inv'r Grp.*, 658 F.3d at 1307.

### C.   Kerr's Claim for Breach of Contract

Under Georgia law, the elements of a claim for breach of contract are "the breach and the resultant damages to the party who has the right to complain about the contract being broken." *Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1343 (N.D. Ga. 2013). "One seeking to enforce a contract must bear the burden of proof as to all the essential elements of the contract, including the assent to the contractual terms." *TranSouth Fin. Corp. v. Rooks*, 604 S.E.2d 562, 564 (Ga. Ct. App. 2004).

The Court has already ruled that the settlement agreement between Kerr and Richmond was a "well-considered and enforceable bargain." [26] at 32. Nothing in the record presently before the Court— including Richmond's assertion that she was never given a copy of Kerr and Timothy's divorce decree until after the settlement agreement was executed—warrants revisiting that holding. There is no dispute that Richmond breached that agreement by failing to remit any of the

insurance proceeds to Kerr, thereby causing Kerr to suffer damages in the amount of $200,000. And as a party to the contract at issue, there is no doubt that Kerr "has the right to complain about the contract being broken." *Chung*, 975 F. Supp. 2d at 1343. Kerr is therefore entitled to summary judgment on her claim for breach of contract.

The Court now turns to Kerr's requested remedy: a constructive trust on $200,000 of the life insurance proceeds. "[A] constructive trust is a remedial device created by a court of equity in order to prevent unjust enrichment." *Lee v. Lee*, 392 S.E.2d 870, 871 (Ga. 1990). It "arises not from the intent of the parties, but by equity with respect to property acquired by fraud, or although acquired without fraud where it is against equity that the property should be retained by the one who holds it." *Aetna Life Ins. Co. v. Weekes*, 244 S.E.2d 46, 48 (Ga. 1978); *see also Total Supply, Inc. v. Pridgen*, 598 S.E.2d 805, 807 (Ga. Ct. App. 2004) (noting that a constructive trust is implied when "the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity").

"[C]onstructive trusts are not automatically impressed whenever one party owes another money." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994). But where one party acquires proceeds of an insurance policy by means of fraud or under other circumstances such that it is against equity for that party to retain a beneficial interest in the insurance proceeds, a constructive trust is an available remedy. *See, e.g., Lee*, 392 S.E.2d at 872; *Larson v. Larson*, 173 S.E.2d 700, 701–02 (Ga. 1970); *Zobrist v. Bennison*, 486 S.E.2d 815, 817 (Ga. 1997); *Jonas v. Jonas*, 633 S.E.2d 544, 550–51 (Ga. Ct. App. 2006). Equally true is that such trusts are uncommon, as courts have rarely found the existence of "sufficient evidence supporting the allegation that [the defendant's] ownership of the insurance policy and its proceeds is against equity." *Lee*, 392 S.E.2d at 872. But this is just such a case.

The undisputed evidence shows that Richmond entered into a binding contract to pay Kerr $200,000 from specified insurance proceeds, breached that contract after receiving the bargained-for consideration from Kerr (dismissal of the prior lawsuit), lied about

having mailed a check to Kerr to delay Kerr's discovery of the breach, then lied again by claiming that her husband had purloined the funds Richmond had promised to pay to Kerr. Richmond's own conduct since the death of Timothy Kerr is such that it is plainly against equity for her to retain the benefit of the $200,000 of the insurance proceeds that she promised to pay Kerr. Kerr is therefore entitled to a constructive trust on that $200,000.

Furthermore, because it is undisputed that Richmond used the insurance funds to purchase her Daisey Lane home, Kerr is entitled to an equitable lien against that home. *See generally Watkins v. Watkins*, 344 S.E.2d 220, 221 (Ga. 1986) (noting that an equitable lien is available under the same circumstances as a constructive trust); *see also Total Supply*, 598 S.E.2d at 807 ("Where the constructive trustee has invested such funds or has purchased other property, the real owner can follow it wherever it can be traced."); *Zobrist*, 486 S.E.2d at 816–17 (affirming imposition of constructive trust over a home where the defendant-homeowner had used insurance funds that properly belonged to the plaintiffs to pay down the home's mortgage).

11

Richmond argues that the law of the State of Texas—where the home is located—does not allow liens to attach to a person's home except under very limited circumstances. But the law does not draw such a clear line, as even Texas courts have recognized that Texas's "homestead and exemption laws . . . were never intended to be, and cannot be, the haven of wrongfully obtained money or properties." *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ. App. 1967). The Court rejects the argument that Texas law prohibits the imposition of a constructive trust or equitable lien over Richmond's home.

## D.   Richmond's Counterclaims

As noted above, Richmond asserted counterclaims against Kerr for wrongful restraint, punitive damages, and attorneys' fees. Kerr moved for summary judgment on the wrongful-restraint counterclaim, arguing that such a claim is unavailable under the circumstances of this case. Although Richmond filed a brief in opposition to Kerr's motion, that brief is completely silent as to her counterclaims. By failing to respond to Kerr's arguments, Richmond abandoned her counterclaim for wrongful restraint. *Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th

Cir. 2013); *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

Richmond's remaining two counterclaims—which seek an award of punitive damages and attorneys' fees—are necessarily derivative of her substantive counterclaim for wrongful restraint. *S.W. v. Clayton Cty. Pub. Sch.*, 185 F. Supp. 3d 1366, 1380 (N.D. Ga. 2016); *Stephen A. Wheat Tr. v. Sparks*, 754 S.E.2d 640, 682 (Ga. Ct. App. 2014). Accordingly, the Court will grant summary judgment to Kerr on all three of Richmond's counterclaims.

### E.   Richmond's Affirmative Defenses

Because neither party has moved for summary judgment on Kerr's fraud claim, the Court turns to Kerr's request for summary judgment on Richmond's affirmative defenses. Kerr cursorily asserts that Richmond "has failed to produce any admissible evidence that supports any of her affirmative defenses." [65-2] at 21. Kerr is mistaken in her belief that this satisfies her burden of "'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support" the affirmative defenses. *Celotex*, 477 U.S. at 325.

A party seeking summary judgment "*always* bears the initial responsibility of . . . *identifying* those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes *demonstrate* the absence of a genuine issue of material fact." *Id.* at 323 (emphasis added).

"In this circuit, even after *Celotex*, it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Four Parcels*, 941 F.2d at 1438 n.19. "Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *Id.*; *see also Eli Research, LLC v. Must Have Info Inc.*, No. 2:13-cv-69-FtM-38CM, 2015 WL 5934632, at *3 (M.D. Fla. Oct. 6, 2015) (denying motion for summary judgment as to certain affirmative defenses where the moving

party merely argued that the defendants had not presented any evidence to support them).[3]

Kerr has failed to carry her initial burden and her motion for summary judgment as to Richmond's affirmative defenses will therefore be denied. Richmond will be permitted to raise these affirmative defenses, to the extent they might be applicable, in opposition to Kerr's fraud claim.

## II.   Receiver James Clifton's Motion for Reconsideration

When this case was filed in superior court, Kerr obtained an ex parte order appointing James Clifton as receiver over all of Richmond's assets. Although the Court subsequently vacated that receivership, finding it was plagued by a litany of procedural defects, the Court nevertheless awarded Clifton $1,688.22 pursuant to O.C.G.A. § 9-8-13(b) against Kerr and Kerr's counsel, jointly and severally. *See* [70]. The Court denied Clifton's request for more than $10,000 in fees

---

[3] To the extent Kerr suggests that Richmond failed to adequately plead her affirmative defenses because she did not include facts supporting them, the Court notes that the Eleventh Circuit "has not extended the pleading requirements of Rule 8(a) to affirmative defenses." *Jackson v. City of Centreville*, 269 F.R.D. 661, 662 (N.D. Ala. 2010).

incurred in connection with hiring local counsel in Texas, and Clifton now moves for reconsideration [71].

Initially, Clifton correctly points out that the Court inadvertently overlooked billing invoices that he filed in support of his request for these extraordinary expenses. His motion will nevertheless be denied. Although the invoices filed by Clifton reflect that he paid $10,866.45 to the Dallas, Texas law firm of Bell Nunnally, he did not submit any affidavits attesting that the work billed for was reasonable or necessary to the receivership.[4] Without such evidence, the Court cannot conclude that fees are not being awarded for "excessive, redundant or otherwise unnecessary" hours. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). This is particularly true in light of the fact that the vast majority of the expenses at issue were incurred after this Court vacated the superior court's receivership order on April 30,

---

[4] Clifton's original motion [33]—which was denied without prejudice on procedural grounds—did include such affidavits, but those affidavits cannot authenticate invoices for work that had not yet occurred at the time they were filed. *See* [33-1] (Clifton's affidavit, dated May 27, 2015); [33-2] (affidavit of Bell Nunnally partner Karen Hart, dated May 15, 2015); [67] (billing records supporting Clifton's amended motion for fees and expenses, reflecting work performed by Bell Nunnally between April 22, 2015 and July 28, 2015).

2015. Moreover, the Court is unpersuaded that fees for work prompted by Clifton's own missteps as receiver are recoverable, at least in the absence of evidence detailing the nature of that work.

For these reasons, Clifton's motion for reconsideration [71] is denied.

## III.   Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment [65] is granted in part and denied in part. The Court grants summary judgment in favor of Plaintiff and against Defendant on Plaintiff's claim for breach of contract, Plaintiff's request for a constructive trust and equitable lien, and all three of Defendant's counterclaims. The Court denies Plaintiff's motion for summary judgment on Richmond's affirmative defenses. The Court denies the receiver's motion for reconsideration [71].

Neither party has moved for summary judgment on Plaintiff's fraud claim or her claim for attorneys' fees. Without expressing any opinion as to the merits of those claims, the Court directs the parties to mediate all remaining claims in this case. This case is hereby referred

to Chief Magistrate Judge Linda T. Walker for assignment of the next available magistrate judge to mediate this matter. The Clerk is directed to administratively close this case pending the outcome of such mediation. If mediation is  unsuccessful, the parties shall promptly move to reopen this case and have it set for trial. If a settlement is finalized, the parties shall promptly file a stipulation of dismissal.[5]

IT IS SO ORDERED this 8th day of March, 2017.

Timothy C. Batten, Sr.
United States District Judge

---

[5] Administratively closing a case is a docket-control device used by the Court for statistical purposes. The parties need file a motion to reopen the case only if settlement negotiations fail. This Order will not prejudice the rights of the parties to this litigation in any manner.

18